```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------
COHEN,

                  Plaintiff,                 13-cv-9181 (JGK)

         - v.-                               MEMORANDUM OPINION
                                             AND ORDER
WALCOTT ET AL,

                  Defendants.
------------------------------------
```
JOHN G. KOELTL, District Judge:

The plaintiff, Robert Cohen ("Cohen"), brings this action against the defendants, the New York City Department of Education (the "DOE"); the former Chancellor of the DOE, Dennis Walcott ("Walcott"); the plaintiff's former supervisors at the DOE, Douglas Knecht ("Knecht"), and Corinne Rello-Anselmi ("Rello-Anselmi"). Cohen asserts claims for (1) due process violations under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983; (2) violations of the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 42 U.S.C. § 300bb, and (3) defamation by implication under New York law. The defendants move for summary judgment dismissing the claims.

For the following reasons, the defendants' motion for summary judgment is **granted**.

I.

Pursuant to Federal Rule of Civil Procedure 56(a), "The court shall grant summary judgment if the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Darnell v. Pineiro, 849 F.3d 17, 22 (2d Cir. 2017). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo v. Prudential Residential Servs., Ltd. P'Ship, 22 F.3d 1219, 1224 (2d Cir. 1994). The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see

also Gallo, 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). If the moving party meets its burden, the nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible . . ." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993).

**II.**

The evidence submitted to the Court, construed in the light most favorable to the plaintiff, demonstrates that there is no dispute as to the following facts, except as otherwise noted.

From 1971 through February 2013, Cohen was employed at-will in a variety of positions by the DOE. Cohen began his career with the DOE as a teacher. Defs.' R. 56.1 Stmt. ¶¶ 2-3, 130; Pl.'s R. 56.1 Counterst. in Opp. to Defs.' R. 56.1 Stmt. ("Pl.'s R. 56.1 Counterst.") ¶¶ 2-3, 130. In 2008, Cohen became the network leader for Children's First Network 104 ("CFN 104"), a DOE school support organization that provides administrative support to approximately 33 schools. Defs.' R. 56.1 Stmt. ¶¶ 3-6; Pl.'s R. 56.1 Counterst. ¶¶ 3-6. While Cohen was the network leader of CFN 104, he was supervised by Rello-Anselmi and then by Knecht. Cohen Dep. 16-17.

As an alternative to DOE networks like CFN 104, DOE school principals can choose to receive administrative support from Partnership Support Organizations ("PSOs"), which are private organizations outside the auspices of the DOE. Defs.' R. 56.1 Stmt. ¶ 73; Pl.'s R. 56.1 Counterst. ¶ 73. In 2012, Cohen was offered a position at one such PSO, the Center for Education Innovation - Public Education Association ("CEI-PEA"). Defs.' R. 56.1 Stmt. ¶ 75; Pl.'s R. 56.1 Counterst. ¶ 75.

At a meeting in March 2012 with the principals for the schools within CFN 104, Cohen announced that he had received the CEI-PEA employment offer, which he was considering accepting. Defs.' R. 56.1 Stmt. ¶ 80; Pl.'s R. 56.1 Counterst. ¶ 80. After the meeting, all of the principals within CFN 104 applied to join CEI-PEA; however, the DOE permitted only some of the CFN 104 principals to switch. Defs.' R. 56.1 Stmt. ¶¶ 81, 100; Pl.'s R. 56.1 Counterst. ¶¶ 81, 100. While Cohen initially indicated that he would retire from the DOE and accept the position with CEI-PEA, he ultimately decided to reject the offer. Defs.' R. 56.1 Stmt. ¶¶ 83, 102-103; Pl.'s R. 56.1 Counterst. ¶¶ 83, 102-103.

In the summer of 2012, the New York City Conflicts of Interest Board (the "COIB") commenced an enforcement action against Cohen pursuant to the New York City Charter (the "Charter"). The COIB alleged that it was a conflict of interest

for the plaintiff, while still employed by the DOE, to inform the CFN 104 principals that he was considering retirement and taking a position with CEI-PEA, and to request that the principals switch from CFN 104 to CEI-PEA. Defs.' R. 56.1 Stmt. ¶¶ 104-105; Pl.'s R. 56.1 Counterst. ¶¶ 104-105. The COIB conducted a hearing, which the plaintiff did not attend because he was being treated for Stage IV melanoma. Pl.'s R. 56.1 Counterst. ¶ 107. Cohen signed a disposition with the COIB and paid a fine of $7,500 to resolve the charges. Under the disposition, the plaintiff admitted that he had ignored the "subtext" of his remarks to the principals, which constituted a violation of the Charter because it was an attempt to obtain an advantage for CEI-PEA. Defs.' R. 56.1 Stmt. ¶¶ 106-107; Pl.'s R. 56.1 Counterst. ¶¶ 106-107; Cohen Dep. 60-61.

On February 7, 2013, Cohen received an e-mail from Knecht requesting that the plaintiff attend a meeting at the DOE headquarters. The plaintiff, Knecht, Justin Tyack (a director from the Office of School Support) and Rochelle Kiam (Tyack's special assistant) attended the meeting. Cohen received an ultimatum: resign from his position at the DOE or be terminated. Defs.' R. 56.1 Stmt. ¶¶ 110-113; Pl.'s R. 56.1 Counterst. ¶¶ 110-113.

Knecht and Tyack claim that they told the plaintiff that he could not continue working for the DOE because of the COIB

5

disposition and because of his poor job performance. Knecht and Tyack claim that the plaintiff did not ask any questions in response to the ultimatum. Defs.' R. 56.1 Stmt. ¶¶ 113-124.

Cohen claims that they only discussed the COIB disposition, but not any matters related to his job performance. Cohen also claims that his requests for more time to consider his options and to consult with others were denied. Pl.'s R. 56.1 Counterst. ¶¶ 113-124.

Cohen agreed to resign on the condition that he be allowed to "shape the narrative of his separation" from the DOE by making it known that it was his decision to retire. The resignation was effective immediately. The terms of the resignation precluded the plaintiff from seeking employment with the DOE or any vendor or company under contract with the DOE. Defs.' R. 56.1 Stmt. ¶¶ 123, 126, 128; Pl.'s R. 56.1 Counterst. ¶¶ 123, 126, 128. In addition, Cohen was forbidden from entering a DOE building. Cohen Dep. 79.

The defendants claim that it was normal protocol for a network leader, such as the plaintiff, to resign immediately. Defs.' R. 56.1 Stmt. ¶¶ 128-129. Cohen responds that, based on his experience with the DOE, he does not believe that any other network leader has resigned during the school year or been forced to accept the same sort of draconian terms of

resignation. Pl.'s R. 56.1 Counterst. ¶¶ 128-129; Cohen Aff. at ¶¶ 26-28.

The gravamen of the plaintiff's § 1983 and defamation claims relate to two e-mails sent on February 7, 2013 by Seth Lemerman, a DOE employee, informing CFN 104's principals that the plaintiff had retired that afternoon (without further elaboration) and that there would be a meeting on February 8, 2013 to discuss the transition. Defs.' R. 56.1 Stmt. ¶ 151; Pl.'s R. 56.1 Counterst. ¶ 151; Exs. Z, AA. At the transition meeting, Knecht said that the plaintiff's retirement was the plaintiff's own decision without further explanation. Defs.' R. 56.1 Stmt. ¶¶ 139-140; Pl.'s R. 56.1 Counterst. ¶¶ 139-140. Knecht also told the principals not to contact Cohen. The defendants claim that the contact restriction was limited to school hours, while the plaintiff claims that Knecht communicated no such limitation. Defs.' R. 56.1 Stmt. ¶ 138; Pl.'s R. 56.1 Counterst. ¶ 138.

On May 2, 2013, Cohen filed a Notice of Claim with the Office of the Comptroller of the City of New York pursuant to Education Law § 3813 and General Municipal Law § 50-e. On December 30, 2013, Cohen filed his complaint against the defendants.

**III.**

**A.**

In his first cause of action, the plaintiff alleges that the defendants deprived him of his liberty interest without due process of law in violation of the Fourteenth Amendment to the United States Constitution. He asserts this claim pursuant to 42 U.S.C. § 1983. The gist of this cause of action is a "stigma plus" claim. Cohen alleges that the e-mails informing the CFN 104 principals that he had retired harmed his reputation.

The loss of one's reputation can violate the Due Process Clause, if the loss of reputation is associated with the deprivation of a federally protected liberty interest, such as government employment. Bd. of Regents v. Roth, 408 U.S. 564, 573 (1972); Valmonte v. Bane, 18 F.3d 992, 999 (2d Cir. 1994); see also Patterson v. City of Utica, 370 F.3d 322, 329-330 (2d Cir. 2004). The loss of reputation without due process of law, in combination with the loss of a more tangible interest, is referred to as a claim for "stigma plus." The "stigma" within a stigma plus claim is the loss of reputation and the "plus" is the loss of a more tangible interest, such as employment. See Velez v. Levy 401 F.3d 75, 87-88 (2d Cir. 2005); Spang v. Katonah-Lewisboro Union Free Sch. Dist., 626 F. Supp. 2d 389, 394-395 (S.D.N.Y. May 18, 2009). "Because stigma plus is a species within the phylum of procedural due process claims," the

plaintiff must demonstrate that his liberty interest was deprived without due process of law in addition to proving the deprivation of a liberty interest. Segal v. City of New York, 459 F.3d 207, 213 (2d Cir. 2006). "[T]he availability of adequate process defeats a stigma plus claim." Id. "[T]he hearing required where a nontenured employee has been stigmatized in the course of a decision to terminate his employment is solely to provide the person an opportunity to clear his name." Codd v. Velger, 429 U.S. 624, 627 (1997) (internal quotation marks omitted).

In Segal, the Court of Appeals for the Second Circuit held that, in a case involving "an at-will government employee, the availability of an adequate, reasonably prompt, post-termination name-clearing hearing is sufficient to defeat a stigma-plus claim." Segal, 459 F.3d at 214. In this case, the defendants correctly argue that there was an adequate post-termination name-clearing hearing available to the plaintiff, namely, an Article 78 proceeding under the CPLR. The availability of an Article 78 proceeding defeats a stigma-plus claim where, as here, the plaintiff, an at-will employee, fails to avail himself of the opportunity to be heard at such a hearing. Anemone v. Metro. Transp. Auth., 629 F.3d 97, 121 (2d Cir. 2011); see also, e.g., Giscombe v. N.Y. City Dep't of Educ., No. 12 CIV 464 (LTS), 2013 WL 829127, at *8 (S.D.N.Y. Feb. 28, 2013). The

9

plaintiff does not dispute the fact that an Article 78 name-clearing hearing was available to him, nor does he make any effort to distinguish the relevant case law.

Similarly, to the extent that the plaintiff contends that his "forced resignation" constitutes a constitutional violation, the failure to use the Article 78 proceeding defeats that theory as well because, in New York, "a plaintiff can challenge a forced resignation through an Article 78 petition." Donelli v. Cty. of Sullivan, No. 07-cv-2157 (JGK), 2009 WL 2365551, at *7 (S.D.N.Y. July 31, 2009) (collecting cases).

Because the plaintiff has failed to establish a triable issue of fact regarding a constitutional violation, it follows that Walcott, Knecht and Rello-Anselmi are also entitled to qualified immunity. Defendants are entitled to qualified immunity from civil suits arising from performance of their discretionary functions so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Whether an official may invoke qualified immunity "generally turns on the 'objective legal reasonableness' of the action . . . assessed in light of the legal rules that were 'clearly established' " when the action was taken. Anderson v. Creighton, 483 U.S. 635, 639 (1987) (citing Harlow, 457 U.S. at 818–19). The pertinent

inquiry is how a reasonable official in the defendant's position would respond. See Cartier v. Lussier, 955 F.2d 841, 843 (2d Cir. 1992); Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Joyner v. Greiner, 195 F. Supp. 2d 500, 507-08 (S.D.N.Y. Mar. 28, 2002); see also Roldan v. Kang, No. 13-CV-6889 (JGK), 2016 WL 4625688, at *4 (S.D.N.Y. Sept. 6, 2016).

The plaintiff has failed to argue, let alone establish, that an official simply informing co-workers that another co-worker has retired, without further explanation, violates a clearly established right.

Moreover, the claims against the DOE must be dismissed because the plaintiff has failed to present any evidence that could establish municipal liability under Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658 (1978). Monell provides that "municipalities may be sued directly under § 1983 for constitutional deprivations inflicted upon private individuals pursuant to a governmental custom, policy, ordinance, regulation, or decision." Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983) (citing Monell, 436 U.S. at 690-691). Municipalities are not subject to liability under theories of *respondent superior*, but rather on the basis that their policies or customs "inflict[ed] the injury upon the plaintiff." Id. "[T]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is

required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Id.; see also Seymore v. Dep't of Corr. Servs., No. 11 CIV 2554 (JGK), 2014 WL 641428, at *8 (S.D.N.Y. Feb. 18, 2014).[1]

Monell only "extends liability to a municipal organization where the organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." Segal, 459 F.3d at 219. Where, as here, a plaintiff fails to establish an underlying constitutional violation there can be no liability under Monell. Id.; see also Seymore, 2014 WL 641428, at *8. In any event, the plaintiff's claims against the DOE fail because the plaintiff has failed to present any evidence to connect his asserted injuries to any training, policy, or custom on the part of the DOE. See Seymore, 2014 WL 641428, at *8; Benavides v. Grier, No. 09 CIV 8600 (JGK), 2011 WL 43521, at *3 (S.D.N.Y. Jan. 6, 2011); see also Estevez v. City of New York, No. 16-cv-00073 (JGK), 2017 WL 1167379, at *7 (S.D.N.Y. Mar. 28, 2017).

The first cause of action for a violation of § 1983 is therefore **dismissed**.

---

[1] The DOE is a municipal organization and is only subject to liability under § 1983 if the Monell requirements are satisfied. See Fierro v. New York City Dep't of Educ., 994 F. Supp. 2d 581, 588 (S.D.N.Y. Feb. 4, 2014).

**B.**

The plaintiff's second cause of action alleges a violation of COBRA, 42 U.S.C. § 300bb. In his complaint, the plaintiff argued that the defendants caused him to lose his COBRA benefits. The defendants moved to dismiss this claim on various bases. The plaintiff failed to respond to any of these arguments. This claim is therefore deemed abandoned and is **dismissed**. See e.g., Gym Door Repairs, Inc. v. Young Equip. Sales, Inc., 206 F. Supp. 3d 869, 905 (S.D.N.Y. Sept. 12, 2016); Intellivision v. Microsoft Corp., No. 07-cv-4079 (JGK), 2008 WL 3884382, at *7 (S.D.N.Y. Aug. 20, 2008).

**C.**

The third cause of action is a state law claim for defamation by implication. The gist of the plaintiff's claim is that the e-mails informing the CFN 104 principals that he had retired, while not explicitly defamatory, implied a nefarious reason for the plaintiff's separation from the DOE. The only basis for jurisdiction over this state law claim is supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

Whether to exercise supplemental jurisdiction "is within the sound discretion of the district court." Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 117 (2d Cir. 2013) (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 349–50 (1988)).

When, as here, all federal claims are eliminated before trial, the balance of factors to be considered --- including judicial economy, convenience, fairness, and comity --- typically points towards declining to exercise supplemental jurisdiction over any remaining state-law claims. Lawtone-Bowles v. City of New York, Dep't of Sanitation, 22 F. Supp. 3d 341, 352 (S.D.N.Y. May 30, 2014) (citing Kolari v. N.Y.-Presbyterian Hosp., 455 F.3d 118, 122–24 (2d Cir. 2006)).

Here, comity factors in particular weigh against the exercise of supplemental jurisdiction because the law on defamation by implication is still developing in New York. The Supreme Court of the State of New York, Appellate Division, First Department in Stepanov v. Dow Jones & Co., 987 N.Y.S.2d 37, 44 (App. Div. 2014), only recently addressed the proper standard for such claims as a matter of first impression. Neither the New York Court of Appeals nor the Court of Appeals for the Second Circuit has addressed the proper standard for defamation by implication, let alone its finer contours. See id. at 43; Biro v. Conde Nast, 883 F. Supp. 2d 441, 464-466 (S.D.N.Y. Aug. 9, 2012).

In this case, "there is no substantial federal policy that would be advanced by retaining jurisdiction" and "[t]he extensive discovery taken by the parties is readily available for use in the state courts." Nat'l Westminster Bank, PLC v.

14

Grant Prideco, Inc., 343 F. Supp. 2d 256, 258 (S.D.N.Y. Nov. 19, 2004). The plaintiff asks that, in the event of dismissal, the case be remanded to state court pursuant to 28 U.S.C. § 1447. However, this case was never removed from state court, and a court cannot remand a case that was never removed. Accordingly, the plaintiff's defamation claim is **dismissed without prejudice**.

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the foregoing reasons, the defendants' motion for summary judgment is **granted.** The Clerk is directed to enter judgment dismissing this action. However, the plaintiff's state law claim for defamation by implication is **dismissed without prejudice** for lack of subject matter jurisdiction. The Clerk is directed to close this case. The Clerk is also directed to close all pending motions.

**SO ORDERED.**

**Dated:** **New York, New York**
**June 23, 2017**             _____/s/_____
                              **John G. Koeltl**
                              **United States District Judge**